**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

WALTER A. WINSHALL, in his capacity )
as the Stockholders' Representative for )
former Harmonix Stockholders. )
                                        )
             Plaintiff, )      C.A. No.: N15C-06-137 EMD CCLD
                                          )
             v. )
                                          )
VIACOM INTERNATIONAL INC., a )
Delaware Corporation. )
                                        )
            Defendant. )
                                          )

Submitted: August 22, 2019
Decided: November 6, 2019

*Upon Defendant Viacom International Inc.'s*
*Motion for Reargument*
***GRANTED***

Upon consideration of Defendant Viacom International Inc.'s Motion for Reargument

(Viacom's Motion")[1] filed by Defendant Viacom International Inc. ("Viacom") on March 4,

2019; Plaintiff's Answer in Opposition to Defendant Viacom International Inc.'s Motion for

Reargument ("Mr. Winshall's Opposition") filed by Mr. Winshall on March 11, 2019; the

hearing on August 15, 2019 (the "Hearing"); Plaintiff's Supplemental Brief in Opposition to

Viacom International Inc.'s Motion For Reargument ("Mr. Winshall's Letter") filed on August

22, 2019; the letter filed by Viacom ("Viacom's Letter") on August 22, 2019; the Court's

February 25, 2019 Memorandum Opinion Denying Plaintiff Walter A. Winshall's Motion for

Partial Summary Judgment and Granting in Part Defendant Viacom International Inc.'s Motion

---

[1] Capitalized term not defined herein shall have the meaning ascribed to it in the Court's Memorandum Opinion
dated February 25, 2019.

for Summary Judgment (the "Summary Judgment Opinion"); Superior Court Civil Rule 59(e); and the entire record of this civil proceeding,

**APPLICABLE STANDARDS**

*Rule 59(e).* Superior Court Civil Rule 59(e) ("Rule 59(e)") provides that a party may file a motion for reargument "within 5 days after the filing of the Court's opinion or decision."[2] The standard for a Rule 59(e) motion is well defined under Delaware law.[3] A motion for reargument will be denied unless the Court has overlooked precedent or legal principles that would have controlling effect, or misapprehended the law or the facts such as would affect the outcome of the decision.[4]

Viacom requests reconsideration because the Court did not address one of Viacom's arguments in partially dismissing Count I in the Complaint. Specifically, Viacom notes that the Court did not address its argument that Mr. Winshall's indemnification claims exceed the contractual cap on indemnification claims in Section 8.6(b) of the Merger Agreement. Viacom contends that this is an independent justification to dismiss the remaining portion of Count I. In response, Mr. Winshall argues that Section 8.6(b) is not a contractual cap and so does not bar Viacom from indemnifying Mr. Winshall for attorneys' fees and costs.

Upon review of Viacom's Motion, the Court determined that reargument was appropriate under Rule 59(e). As such, the Court held the Hearing and thereafter entertained Mr. Winshall's Letter and Viacom's letter.

*Contract Interpretation.* A court generally gives priority to the parties' intentions contained in the four corners of the contract.[5] "In upholding the intentions of the parties, a court

---

[2] Super. Ct. Civ. R. 59(e).
[3] *Kennedy v. Invacare Corp.*, 2006 WL 488590, at *1 (Del. Super. Jan. 31, 2006).
[4] *Woodward v. Farm Family Cas. Ins. Co.*, 2001 WL 1456865, at *1 (Del. Super. Aug. 24, 2001).
[5] *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009).

must construe the agreement as a whole, giving effect to all provisions therein."[6] "The meaning inferred from a particular provision cannot control the meaning of the entire agreement if such an inference conflicts with the agreement's overall scheme or plan."[7]

Where the language of the contract is plain and unambiguous, the contract must be enforced as written.[8] "If a writing is plain and clear on its face, *i.e.*, its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent."[9] Moreover, a contract is not rendered ambiguous merely because the parties disagree as to its construction and application.[10]

The parol evidence rule bars the admission of evidence outside the contract's four corners to vary or contradict the unambiguous language.[11] However, "where reasonable minds could differ as to the contract's meaning, a factual dispute results and the fact-finder must consider admissible extrinsic evidence.[12] "[I]n a dispute over the proper interpretation of a contract, summary judgment may not be awarded if the language is ambiguous and the moving party has failed to offer uncontested evidence as to the proper interpretation."[13]

PARTIES' CONTENTIONS

***Viacom.*** Viacom asserts that Viacom is only obligated to pay Mr. Winshall and the other Harmonix Shareholders the amount of the Merger Consideration under the Merger Agreement. According to Viacom, Section 8.6(b) simply clarifies that Viacom may pay part of the amount of

---

[6] *E.I. du Pont de Nemours and Co., Inc. v. Shell Oil Co.,* 498 A.2d 1108, 1113 (1985).
[7] *Riverbend Cmty., LLC v. Green Stone Engr., LLC*, 55 A.3d 330, 334 (Del. 2012) (citing *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.,* 36 A.3d 776, 779 (Del. 2012)).
[8] *Lorillard Tobacco Co. v. Am. Legacy Found*, 903 A.2d 728, 740 (Del. 2006).
[9] *City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993).
[10] *See, e.g., In re Verizon Ins. Coverage Appeals*, __ A.3d __, 2019 WL 5616263, at *3 (Del. Oct. 31, 2019)(citing to *Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins.*, 616 A.2d 1192, 1196 (Del. 1992)).
[11] *GMG Capital*, 36 A.3d 776 at 783.
[12] *Id.*
[13] *Id.*

3

the Merger Consideration in the form of indemnification fees.  Viacom notes (and the record demonstrates) that Viacom has fully paid the Merger Consideration.  Therefore, Viacom contends that the Court should dismiss Mr. Winshall's claim because Viacom has already satisfied its indemnification obligations.

Viacom further argues that, even if the Court finds that Section 8.6(b) is ambiguous, all extrinsic evidence suggests that the parties intended to limit Viacom's payments to the amount of the Merger Consideration. To support this proposition, Viacom cites the deposition testimony of Gregg Walker, Viacom's primary businessperson in the negotiations of the Merger Agreement, and Michael Fricklas, Viacom's General Counsel at the time the parties negotiated the Merger Agreement. Mr. Walker and Mr. Fricklas testified that the purpose of the indemnification provision was to assure payment of the Merger Consideration. Specifically, Mr. Walker testified that it is unusual for a buyer to indemnify a seller. Mr. Walker also explained that the parties capped Viacom's indemnification obligation at the "unpaid amount of the Merger Consideration then payable" because the Merger Consideration was not fixed in amount or in time. For example, the Merger Consideration at the time the parties executed the Merger Agreement in 2006 was $175 million. The Merger Consideration increased when Viacom made the 2007 and 2008 Earn-Out Payments. Mr. Fricklas testified that the parties' intention in drafting Section 8.6(b) was that "once the [M]erger [C]onsideration was paid, there [would be] no additional amounts that could be subject to payment under indemnification."

Viacom also claims that Mr. Winshall's interpretation of Section 8.6(b) would lead to an absurd result.  For example, each time an Earn-Out amount was determined, Viacom's obligation would double: the amount of the Earn-Out *plus* another amount equal to the Earn-Out.

4

In Viacom's Letter, Viacom avers that Section 8.6 does not contain an explicit fee-shifting provision, so Mr. Winshall is not entitled to attorneys' fees. Finally, in Viacom's Letter, Viacom claims that Viacom's interpretation of Section 8.6(b) does not render the term "Losses" a nullity because "Losses" is used elsewhere in the Merger Agreement.

***Mr. Winshall.*** Mr. Winshall asserts that Viacom must (1) pay the Merger Consideration, and, in addition, (2) indemnify the Harmonix Shareholders for Losses in the amount of the unpaid Merger Consideration at the time the indemnification claim accrued.

To support its proposition, Mr. Winshall claims that Viacom's interpretation would render Section 8.6(b) a nullity because Viacom already had an obligation to pay the Merger Consideration. Second, Mr. Winshall asserts that Viacom's interpretation is unreasonable because it ignores the term "Losses" which refers to a category of money that is separate from the Merger Consideration. Third, Mr. Winshall contends that Section 8.6(b) does not create an implied indemnification cap, as Viacom argues it does. Mr. Winshall notes that the parties defined the term "Indemnification Cap Amount" in Section 8.2(c)(ii) to limit the Harmonix Shareholders' obligations and the parties would have defined a similar term if they had intended to create an indemnification cap for Viacom.

Fourth, Mr. Winshall argues that Viacom's extrinsic evidence is not helpful to the Court because it merely reveals Viacom's unexpressed, unilateral and after-the-fact intentions in negotiating the Merger Agreement. Mr. Winshall also alleges that Mr. Fricklas' testimony does not state that Viacom is only liable for the Merger Consideration. Instead, Mr. Fricklas' testimony suggests that, once Viacom has indemnified the Harmonix Shareholders for Losses in the amount of the unpaid Merger Consideration, Viacom is no longer liable.

In Mr. Winshall's Letter, Mr. Winshall supplements his argument by, among other things, (i) claiming that Viacom's interpretation of Section 8.6(b) renders the term "Losses" a nullity, (ii) citing *White v. Curo Texas Holdings, LLC*[14] to argue that Section 8.6(b) does not clearly create an indemnification cap, and (iii) citing *Stifel Financial Corp. v. Cochran*,[15] for the proposition that indemnification is not complete unless Mr. Winshall receives attorneys' fees.

**DISCUSSION**

The provision at issue is Section 8.6 of the Merger Agreement. Section 8.6 provides as follows:

> (a)  <u>Indemnification</u>. Subject to the limitations set forth in this Article VIII, from and after the Effective Time, each of Parent [Viacom] and MergerCo, jointly and severally, shall indemnify, defend and hold harmless each Merger Consideration Recipient [Mr. Winshall and the other Harmonix Shareholders] against any and all Losses actually incurred or suffered by any such Merger Consideration Recipient as a result of:
>
>> (i)  the breach of any representation or warranty of Parent or MergerCo set forth in this Agreement or in any Ancillary Document; and
>>
>> (ii)  the breach of any covenant or agreement of Parent or MergerCo contained in this Agreement or in any Ancillary Document.
>
> (b)  <u>Certain Limitations</u>. Parent and MergerCo shall not be obligated to indemnify any Merger Consideration Recipient pursuant to Section 8.6(a) to the extent the aggregate amount of all indemnifiable Losses exceeds the aggregate unpaid amount of the Merger Consideration then payable.[16]

"Losses" are defined in the Merger Agreement as:

> any and all losses, liabilities, damages, claims, awards, judgments, diminution in value, Taxes, fees, costs and expenses (including reasonable attorneys' fees and expenses, expenses of investigation, defense, prosecution and settlement of claims (including any claims under Article VIII hereof), court costs or enforcement of the provisions of this Agreement) suffered or incurred by such Person, plus any interest that may accrue on the foregoing.[17]

---

[14] 2017 WL 1369332, at *12 (Del. Ch. Feb. 21, 2017).
[15] 809 A.2d 555, 561 (Del. 2002).
[16] Merger Agreement, § 8.6.
[17] Ex. 5, Section 10.7.

The Court finds that Section 8.6(b) is unambiguous. As such, the Court will apply Section 8.6(b) as drafted and not consider extrinsic evidence to determine the meaning of Section 8.6(a).[18] The Court, however, does not find that Section 8.6(b) is a fee shifting provision that awards a party its attorneys' fees and expenses on first-party claims.

Reading Section 8.6(b) to mean that Viacom's obligations were capped on all claims when Viacom paid the Merger Consideration would be to construe Section 8.6 too broadly as it relates to the issues here. This is clear because Viacom was obligated to pay the Merger Consideration under other provisions of the Merger Agreement. Section 8.6 only applies to indemnifiable "Losses."

In *White v. Curo Texas Holdings, LLC*,[19] the Delaware Court of Chancery found that an indemnification provision, which the defendant alleged was an indemnification cap, did not bar the plaintiffs' claims for advancement. Specifically, the Court of Chancery held that the indemnification provision did not limit the plaintiffs' recovery because when the provision was "read within the structure of the [ ] Agreement as a whole, the obvious purpose of [the provision] is to provide a monetary remedy for commitments under the [ ] Agreement *other than commitments to pay sums of money set forth in other sections of the* [ ] *Agreement*."[20]

In addition, in the *White* case, the Court of Chancery rejected the defendant's argument that the indemnification provision was a cap on advancement claims because:

> [I]f [the defendant] were correct and the parties wanted to place a ceiling on the amount of advancements that [the plaintiffs] could obtain from [the defendant], then the drafters of the [ ] Agreement chose an implausibly circuitous and tortured means of implementing that agreement. The most straightforward way to accomplish that result would be to say [ ] that there is a cap on the amount of money that [the defendant] was obligated to advance.[21]

---

[18] *See generally, In re Verizon Ins. Coverage Appeals*, 2019 WL 5616263, at *3.
[19] 2017 WL 1369332, at *12.
[20] *Id*. at *14.
[21] *Id*. at *15.

Here, as in *White*, the purpose of Section 8.6 is for Viacom to indemnify the Harmonix Shareholders for Losses arising from Viacom's breach of representations, warranties or covenants in the Merger Agreement. The purpose of Section 8.6 is not to cap claims otherwise payable under the Merger Agreement or to reiterate that Viacom is obligated to pay the Merger Consideration.

The Court agrees with the reasoning set out in *White*. Reading Section 8.6 to mean that the parties intended to cap Viacom's liability at the Merger Consideration is implausibly circuitous. The parties could have stated that Viacom's liability is capped at the Merger Consideration, if the parties intended to impose such a cap. Instead, the parties chose to include an indemnification provision and then to place limitations on the indemnification provision. These limitations show that the parties intended for Viacom to pay (1) the Merger Consideration, and, in addition, (2) indemnify the Harmonix Shareholders for Losses in the amount of the unpaid Merger Consideration at the time the indemnification claim accrued.

However, the Court finds that Mr. Winshall is not entitled to attorneys' fees under Section 8.6. Admittedly, the Court struggled with the Viacom's argument that Section 8.6— which allows for attorneys' fees and expenses—would be unavailable to Mr. Winchell when it became necessary for him hire attorneys to compel Viacom to pay the Merger Consideration. Section 8.6, at first blush, reads that there is a limitation on the aggregate amount of indemnifiable losses and, because that limitation is the Merger Consideration, any fees and expenses occurred by Mr. Winchell in recovering the Merger Consideration from Viacom would not be recoverable as those amounts would always be in excess of the Merger Consideration. The Court found this interpretation, at the very least, twisted. Oral argument at the Hearing did

8

not necessarily help the Court on this point.  Both parties' arguments were plausible and implausible.

This internal inconsistency or conundrum would be true, though, only if Section 8.6 were a fee shifting provision as to first-party claims.  But, Section 8.6 is not a fee-shifting provision as to first-party claims.  As drafted, Section 8.6 applies to third-party claims.  It is for this reason that reargument is appropriate—the Court overlooked legal principles that would have a controlling effect.

Delaware courts follow the "American Rule" that parties are responsible for their own attorneys' fees.[22]  An exception to the American Rule is that parties may shift fees to another party through a contractual provision.[23]  "The fee-shifting provision must be a clear and unequivocal agreement in connection with a dispute between parties involving a failure to fulfill obligations under the contract."[24]

In *TranSched Systems Ltd. v. Versyss Transit Solutions, LLC*,[25] the Court held that there is a presumption that the term "indemnify" in standard indemnity provisions applies to third-party claims, rather than to first-party claims. Otherwise, the Court found, standard indemnification provisions would "swallow the [American] Rule."[26]  The indemnification provision must unequivocally state that it applies to suits between the parties to apply to first-party claims.[27]  In the *TranSched Systems Ltd.* case, the Court held that a very similar indemnification provision applied only to third-party claims. That indemnity provision stated:

"In the event [defendant] breaches (or in the event any third party alleges facts that, if true, would mean [defendant] has breached) any of its representations, warranties,

---

[22] *TranSched Sys. Ltd. v. Versyss Transit Sols., LLC*, 2012 WL 1415466, at *1 (Del. Super. Mar. 29, 2012).
[23] *Id.*
[24] *Deere & Co. v. Exelon Generation Acquisitions, LLC*, 2016 WL 6879525, at *1 (Del. Super. Nov. 22, 2016).
[25] 2012 WL 1415466, at *1.
[26] *Id.* at *2.
[27] *Id.*

and covenants contained in this Agreement, and provided that [plaintiff] makes a written claim for indemnification against [defendant] within such survival period, then [defendant] shall jointly and severally indemnify and hold harmless [plaintiff] from and against the entirety of any Adverse Consequences [plaintiff] may suffer through and after the date of the claim for indemnification (including any Adverse Consequences [plaintiff] may suffer after the end of any applicable survival period) resulting from, arising out of, relating to, in the nature of, or caused by the breach (or the alleged breach).[28]

"Adverse Consequences" included attorneys' fees.

Here, there is no explicit language that Section 8.6(b) applies to the reimbursement of attorneys' fees and expenses on first-party claims between the parties. Instead, Section 8.6(b) applies to third-party claims brought against the parties relating to indemnifiable Losses. Both Viacom and Mr. Winshall were represented by sophisticated counsel that know how to draft a general indemnification and, most likely, a fee shifting provision under Delaware law. Accordingly, the Court will follow the reasoning in *TranSched Systems Ltd.* and find that Mr. Winshall is not entitled to attorneys' fees.

### CONCLUSION

For the reasons set forth above, Defendant Viacom International Inc.'s Motion for Reargument is **GRANTED**. The Court will not allow Count I to proceed as to attorneys' fees and costs, and enters Judgment in full in favor of Viacom on Count I.

Dated: November 6, 2019
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

CC:    File&ServeXpress

---

[28] *Id*. at *1.

10